May it please the Court, Mr. Fong, my name is Richard Fredericks, I represent and do represent Jose Juan Ramirez-Robles. I would ask to reserve 8 minutes of my time for rebuttal. You can try to watch the clock, I'll also try to help you as well. Okay, thank you. This is an appeal, Your Honors, from a jury verdict in which the jury found Mr. Robles guilty of distribution of methamphetamine, conspiracy to distribute methamphetamine, aggravated illegal re-entry, and unlawful possession of a firearm. For practical purposes, Mr. Ramirez-Robles admitted the illegal re-entry and the firearm charge. The charges emanated from a controlled buy which took place in October of 2001. The government had a criminal working for them who was trying to lighten his sentence. His name was Guthrie. At that time, my client was living with a woman, Turner, and Mr. Guthrie told the police, I can get you some methamphetamine, I can help you out, and the source of my methamphetamine is Turner. So the government wired up Mr. Guthrie, gave him $100 in buy money, and sent him out to do his deed. Mr. Guthrie went to the house of Turner and Mr. Robles, met with Ms. Turner, talked with her about getting methamphetamine, and explained that he didn't have all of the money necessary to purchase a quarter pound. So she gave it to him. She So Mr. Guthrie got the quarter pound. A few hours later, after obtaining a search warrant, the government searched the house and arrested both Guthrie and my client. They were both charged in federal court, or in state court, excuse me. Guthrie or Turner? I'm sorry. Turner, the girlfriend, and my client were both charged in state court. Turner took a deal and got probation. She agreed to cooperate against Mr. Robles, and his case went federal. And he was picked up on the wire parts, wasn't he? You know, Judge, there's some talk about that in the brief. It's debatable whether he was picked up or not. When Ms. Turner testified, she was asked by the prosecutor, is that Mr. Robles in the background? And she said, yes. But that's the only identification of Mr. Robles' voice, and nothing is intelligible if it was him. You can't discern any words that may have been said by Mr. Robles if it was him. I guess my question is, basically she deep-sixed him. He's the mastermind. She's basically uncorroborated co-conspirator. But the cases say that's enough. So you've got to be careful who you keep company with, because this is what happens. Do you have some other cases we should be looking at in light of her pretty clear testimony that seems to me it would be enough? No, I don't, Judge. And I think the cases are clear and replete that the testimony of a conviction. But we still have the standard of reasonableness and whether a reasonable jury could believe beyond a reasonable doubt. And we submit that she doesn't pass that measure. And how do you parse that out from being just a difference between one view of credibility versus another? Well, it's difficult to argue, Judge. That was the last argument I had written down here, the sufficiency of the evidence, the Rule 29. A person could spend hours or a lot of time trying to show that there wasn't sufficient evidence. I jotted down several of the points. Well, if you don't want to spend your time on it, that's fine with me, because I will say I'm particularly interested in the polygraph issue. All right. And so I won't address those, Judge. But there were a number of points which we briefed and I'm prepared to argue that show that Ms. Turner's testimony wasn't credible and couldn't be believed beyond a reasonable doubt by a reasonable witness. I will turn now to the polygraph. We had a defense polygraph. There were three questions that were asked, and the nature of the questions is particularly important. The precise wording of them is particularly important, given the value of case law. They're set out on page 29 of our brief, page 23 of the government's brief. Are you arguing number one and number three? They're our strongest points. There's no question. Pretty hard to argue number two. That asks his mental state. I agree, Judge. And so the trial court could say, we're not going to let number two in because it's precluded by 704. An expert can't comment on the credibility or mental state. So one and three are clearly our strongest. We had a pre-trial hearing on the admissibility of the polygraph results. Both parties filed writings or briefs. The government sought to exclude the results of the polygraph on Federal Rule of Evidence 704 and 403. We had oral arguments on the matter, and it was very brief. The oral argument consists of three pages of transcript. The focus throughout that three pages of transcript is completely on whether the results should be barred by 704. 403 is never mentioned. And 702 is not mentioned. 702 isn't mentioned, but I think it was presupposed. It was summarily denied after that three transcript pages worth of conversation. And I think that the judge's exact words when he denied it are important. But we stuffed them out on page 29 of our brief. He wanted us to decide it, right? I'm sorry, Judge? He wanted us to decide it. You said it would be an interesting issue for the court. That's exactly right. I'm not going to allow it. I don't want to be the first. I can't tell you how often we read that. Well, we'll just kick it up there and see what they have to say. And then they get mad when we do. Then we reverse them. They don't like it. Well, he wanted you to decide it. He saw it as an interesting issue, and he just summarily denied it. And our gripe, our point is that we should have been allowed a Daubert hearing to attempt to establish the reliability of this polygraph exam. And I recognize that the Ninth Circuit after Daubert has not been particularly hospitable to polygraph exams. In fact, there has never been a case that's allowed it. But there are four important cases that have addressed the issue. Let's follow the logical sequence of it. Because it seems to me that if you look at the cases, you would have to have a Daubert hearing under 704 because after Daubert, it changed the whole landscape. Then you'd have the hearing. He'd look at 702, and he would look at 403. And likely, he could even make his decision on 403. And we might predict what that might be. But in any event, in the off chance that the judge might see it differently than many other judges over the circuit, you think he has to at least go through that process to come to the conclusion. Well, I think he does under Daubert. I think it's incumbent upon him or her, the trial judge, to have a Daubert hearing unless the evidence is going to be excluded for some other reason, 704 or 403. But we can't, this is my question, is if he had not had a Daubert hearing but had talked about 403, we might be in a different posture, correct? There's no question. And that's at least the Benavenides case. That's the Benavenides case and the Cordoba III case. Both of those cases involved long Daubert hearings. And at the end of them, the trial judge said no, 403. But since he didn't decide on 403, we can't use it as an alternate ground for affirmance, correct? Since he didn't even address it. He didn't address it, and so our point is that's an abuse of discretion by not even addressing that issue, by not having a Daubert hearing and by not excluding the evidence for some other reason, 704. In the cases, Benavenides and Cordoba, as I both mentioned, involved Daubert hearings. Holographs can't come in. Campos and Booth, both important cases, didn't involve actual Daubert hearings, but the court excluded the evidence based upon 704. And again, that's not our situation here. Why couldn't we, as an appellate court, consider 403? I'm sorry, Judge? Why couldn't we consider 403? For this court to supplant its wisdom on that issue, I think it is skipping the step. I would submit it's not proper for the Court of Appeals to make the 403 determination now after it was skipped at the trial level. There's one other point I'd like to make, and I think it's an important one. The courts aren't allowing holograph evidence in. It's pretty clear. The cases are replete. But Daubert says that parties are entitled to present scientific evidence if it's reliable and so forth. My point is this. The cases that we're all referring to involve holographs that took place in the middle 1990s. Well, it's several years removed. And perhaps holograph evidence has improved since then. Holography may be more reliable since then. Let us have a hearing to attempt to establish the reliability. And that's what was missing here. The final issue we raised was the introduction of my client's two prior convictions and also some uncharged bad act evidence. Just briefly, because my time is limited, my client is a Mexican. He was illegally in the United States. In 1997, he was convicted of distributing methamphetamine in jail and deported. A couple of years later, he was back in the United States and convicted of possession of methamphetamine. Despite our objections, the court allowed those two convictions to come in in the government's case-in-chief. I don't know if the court can envision what it's like trying to defend a Mexican illegally in the United States in Medford, Oregon, on drug charges. But when the jury heard of these two priors, he's done. What more does it take? The jury is just inflamed. I guess my point is there is overwhelming prejudice in that circumstance. And he testified, as I recall? He did testify. And I should back up a step. Because of the aggravated illegal entry charge, the government had to prove the predicate underlying offense. And so the indictment spells out that he was previously convicted of a drug trafficking offense. We stipulated, offered to stipulate, that he had been convicted of a crime punishable by more than one year. That was accepted. And the judge didn't read the indictment in its original form to the jury. But nevertheless, the judge allowed the government to put on the evidence of the convictions in the government's case-in-chief. But then worse, when Mr. Ramirez-Robles testified and admitted these prior convictions, the judge allowed the government to go into the details, the underlying facts of the prior convictions. You're welcome to proceed, but you had wanted to save time. I'll stop here. Thank you, Judge. Good morning, Your Honors. My name is Doug Fong. I represent the government. I'll address the polygraph issue since that basically came up first. Judge, the record reflects that the only reason why the polygraph evidence was offered was to offer an opinion, an expert's opinion on the defendant's knowledge and intent. And that is prohibited by Federal Rule 704B. There were three questions. As Your Honors pointed out, question number two clearly goes to this defendant's mental state, his knowledge. But our point is this, is that questions number one and three, even though phrased artfully, still go to the defendant's knowledge about the drug transaction. Question number one was this. Was the quarter pound of methamphetamine yours, basically? This defendant says no. What he's really saying is, I didn't know about it.  That's what it says. Well, it seemed to me that you could answer that question and say, no, it's not mine. And that could be truthful. And you could still be convicted as part of this whole scheme. In other words, he got it from somebody else. He's selling it for somebody else. So it didn't seem to me that this question really went to intent and knowledge. Well, Your Honor, that's wrong. Here's why. That certainly, the nature of the question and the defendant's guilt or innocence, that certainly diminishes the probativeness of this particular polygraph question. However, in the context of the defendant's defense, I didn't know anything, I didn't see anything, I didn't do anything, it's really an artful way of saying, I didn't know about the transaction. The methamphetamine wasn't mine to begin with. But this is just another artful way of restating, I didn't know about this, I didn't have any intent to deliver it or be a part of it. Likewise... That still, that question, though, doesn't really answer that question. It doesn't say he doesn't know about it. And it doesn't say that he didn't intend to sell it. It really doesn't implicate. The question is ownership. And ownership may be an indicia of knowledge or, well, only really of knowledge. But it seems to me that that question really is one that you have to stretch it to turn it into knowledge and intent. Our point, Judge, is this, is that although that question and question number three don't directly implicate knowledge, the real standard is whether or not that question and the answer compels the conclusion that he did not possess the requisite knowledge about this. And I agree with that question. And so if I were to answer that question, I'd say, well, no, it doesn't compel that conclusion at all. In our view, it does. You think it does compel. Here's why. It's because of the context. It's because the context of him saying, no, I wasn't involved in any of this. I had no knowledge about the transaction. I had no participation in it whatsoever. He's not saying... Of course, it's somewhat ironic that you then now on the next point are going to be arguing that his priors were relevant to show that he did have knowledge. So the government is stretching to say that ownership questions shouldn't be allowed in because you can prove knowledge. And in relation to specific items in the specific crime, then you turn around and say, now the priors are okay because that way we can show that he had knowledge. Isn't that a little bit ironic? I think I understand your honor's point.  Here's why. Is that the issue on the polygraph is whether or not an expert is allowed to testify as to the credibility of the defendant on his own knowledge. As to whether he owned the drug. Or whether did he even know about the drug. He doesn't say that. He says, was that quarter pound of meth sold on October 24th last year yours? Yes or no? Either it was or it wasn't. And you're saying if he says it wasn't, then you must assume from that fact that it's inevitable that he didn't have anything to do with the sale of the drugs. What we're saying is that by the defendant answering this question and offering the polygrapher's opinion on his truthfulness on the answer of that question, the defendant is trying to compel the conclusion, I didn't know about the transaction. The methamphetamine wasn't mine. I didn't know what she was doing. I had no part in it. He's attacking the foundation from which you would argue the contrary. That is, if he actually had, if it belonged to him or he had ordered it, you would argue that that shows that he knew this sale was going to proceed. It was for purposes of distribution. You're saying because they're trying to disavow that it was his, inevitably, therefore, they're attacking the circumstantial evidence from which the government wants to argue knowledge. That's the irony that I find. The government is building its knowledge case on a series of circumstantial building blocks, and when the defendant wants to come in with what may be scientifically reliable evidence, that at least as to one of those building blocks, you are wrong that he didn't own it and he didn't order it. You may have other evidence, but at least as to those two building blocks, your evidence is impeached. And you're saying because of that, we have held that so long as it somehow tracks into knowledge, it can't possibly come in under Dauber or under the 704. That's your argument. I'm not really sure I understand your point. I'm sorry to say, Your Honor. Well, you're saying that the answer, if the answer to one and three were admitted, that is inevitably going to his mental state as to the actual act of distribution. Yes. Okay. And that's a factual statement, whether or not he owned or ordered it. It doesn't go to his mental state. It goes to what he did. You want to use that fact as to what he did as circumstantial evidence of, A, what he did, and that he knew what he was doing with regard to distribution. Maybe state it another way, Your Honor. If he says, look, I own the methamphetamine, but it was just for my personal use, I had nothing to do with this, that certainly is evidence of his mental state. That would be, and that wasn't the question. That wasn't the question that was asked. But the flip side is this. If he says, no, I didn't own that methamphetamine. All right. I had nothing to do with it. That's not what this question just says. Right. Was that yours? That's what came in, period. End of, and I didn't have anything to do with it. That's an amplification beyond what the question asked was. You can argue either way. I understand what you're saying. But all we're saying is that question also implicates the defendant's mental state, although state it another way. And that's my whole point, counsel. I mean, the government has to prove mental state by inference. And the question, as I read, and, you know, I haven't made a decision on this, but I think if you lay a marker down or a boundary that says anything from which one would circumstantially argue mental state, circumstantially, OK, whether it's the fact that he was present with the case we just had before us, the fact that the defendant was the only one perhaps with motive to go out and threaten witnesses. All of those are circumstantial facts. I think what the as I understand what the concern is that we not allow a polygrapher to come in and testify, which question number two does, did you know that Sherry was going to sell that quarter pound? That goes directly to his knowledge, to his mental state, intent. These others are removed by degrees and are circumstantial building blocks. That's correct. And I think our point still is that because they directly implicate his mental state, that they fall under 702. Well, let's go back to Campos. If you had the case in front of you and this gentleman, there was testimony that he didn't own the meth in your case. Let's just say there was testimony. What would you then argue to the jury? If there's testimony that he did not own the meth? Yeah. I mean, that's basically what his testimony was. I didn't know about it. No, I didn't know about it. He did not own the meth. What would your argument then be to the jury? Our argument would be at least he knew about it and encouraged the transaction and still nonetheless. Exactly. So in other words, if I then go back to Campos, it says, if the testimony leaves no room for inference but compels the conclusion that she did not possess the requisite knowledge. It seems to me that's where we kind of are having semantic differences because what you've just said to me you would argue, it may not, his answer doesn't compel that, but you're arguing from it that it means something, but it doesn't compel that result. So it seems to me that maybe the questions here fall in those cracks, perhaps, that Campos talked about. That could be. However, the context of this case, I mean, our evidence is that the methamphetamine came directly from the defendant. So in the context of this particular case, when the defendant knows what our evidence is and offers the particular questions one and three, it's our position that still, even if it's in even if the question is phrased artfully in the fact of an act and the act of ownership, as opposed to knowledge, it still implicates knowledge. Assuming that the questions were all right and did not go to his knowledge, why wouldn't we admit the polygraphs or any other? Yes. Obviously, there's two other reasons. First, this is clearly a comment by the calligrapher on the defendant's credibility. If the evidence were to come in, even if we had a doubt of hearing and the evidence were to come in, the calligrapher, basically, his testimony is going to be, I believe this person when he says I didn't own the meth. I believe this person when he testifies that he didn't order the quarter pound of methamphetamine. Well, I don't think he'd say I believe. I think he'd say that this is what the polygraph shows. But the clear inference on that is that the defendant is credible. So the jury shouldn't believe it. So would the district court, though, look at that? That is a very legitimate argument to make, which is, of course, why a polygraph, why they don't get in. But if, as Judge Hugg said, the questions were to pass muster, is that next step that you're talking about an analysis that needs to be made by the district court rather than the court of appeals? Well, Your Honor, we certainly did make that. My recollection is we certainly did make that argument when the district court went to make his rulings. Granted, the district court's ruling was certainly vain. But when we went to do the motions eliminated in the first place, we argued, I think it was 704, we asked the court to make a ruling on 704B as well as 403. I think there was mention made of that. And we certainly make that argument in our brief. But the point is, Your Honors, is that this is precisely the kind of inadmissible evidence on the defendant's credibility, particularly when it is the court of appeals. Well, I'm trying to get beyond that. We've had quite a bit of discussion about that. But assuming you're wrong on that, why shouldn't the polygraph come in otherwise? Can we look at 403? Yes, Your Honors, you can. So long as the record supports a finding on that, Your Honors can rule on or at least affirm the trial court's ruling on any grounds that Your Honors deem reasonable. We usually say that's true, but can we do that in a case where our reviewing standard would be abuse of discretion and we don't have any discretion having been exercised? So, therefore, we would be making an initial weighing of the evidence in effect, which is not really a pure legal issue, but involves discretion on an evidentiary issue. No, Your Honors, you wouldn't. Here's why. At least when we ask the court to make its initial ruling, we ask the court to rule on 704 as well as 403. When the court made its ruling on the polygraph, it certainly glossed over and didn't precisely state what its precise ruling was, but at least those matters were before the court. And Judge Panner cited General Ninth Circuit precedents. All the cases that we cited included decisions on the 704B as well as the 403 rulings that didn't even involve the court avoiding the Dauber hearings. He also cited his own experience saying, scared him to death the idea that the polygraph would come in because the government would start using it as a permit. Your Honor, and rightly so. Here's really why. So, but you think that was an implicit invocation of 403 standards? Well, it certainly would appear that way, Your Honors. But the reason for that, Judge, is this. Is that let's suppose the shoe were on the other foot. Let's suppose this defendant failed, somehow we found out about it, and we're seeking the offer to talk that evidence in. Frankly, there's no court in this circuit that's going to let it in, in our favor. Why should the situation be different if the defendant passes? The Fifth Amendment would be one reason why you might not be able to affirmatively introduce that. Well, not if the defendant testifies as he did in this case. But moreover, Your Honors, while the court, while this circuit hasn't ruled per se that the polygraph is inadmissible. Well, that seems to be where your argument leads. If you're saying that any time a polygrapher gets up and testifies that the answers, such as the ones given here, are, per the polygraph, truthful, and credibility, and that the polygrapher is not allowed to opine as to the defendant's credibility, you're essentially saying no polygraph evidence can come in, because that's always why it's presented. It goes to credibility. That's where this circuit seems to be going. Well, at least that's where you'd like this to be. But in any event, you understand that's the implication of this credibility argument. Yes, clearly seems to be where this court is going after Dauber. As a matter of law, this court, the Ninth Circuit is saying that the polygraph is highly credible. And what's the case that comes closest to saying that? Well, Benavides is probably the most all-encompassing case. The difference in Benavides is that we actually have the judge making a 403 ruling. The judge specifically made a 403 ruling on the record. Right. So we could say we certainly don't disagree with that. This court could certainly find that same thing based upon the facts in this case. But it seemed to us with Judge Hanner's ruling in his remarks, he was implicitly making a 403 ruling as well. Why would you say that if a Daubert hearing is required, that the prosecution wouldn't be able to use it if the defendant testified? Because, Judge Hanner, at least given the state of the case law in the Ninth Circuit now, the Ninth Circuit has said, look, this evidence, because of its nature, is highly prejudicial, such that the court can decide this on a 403 basis without even doing a Daubert hearing, that the court can decide it on a 704 basis without even doing a Daubert hearing. But it's not doing it on the credibility grounds. I'm sorry? It's not doing it on the credibility grounds, which you'd like us to say is. The court hasn't decided it on credibility grounds. Right. But that is another one of our arguments that the court hasn't addressed yet, is that this evidence goes directly to the defendant's credibility. Was that argued to the district court? You know, Judge, my recollection is that we did raise the issue, but it's not in my fingertips. I'm sorry to say. Let me address briefly the defendant's prior bad acts arguments. I think the most important point on 404B, Your Honors, is that that is a rule of inclusion, which means that the other acts evidence is admissible unless it only tends to prove propensity. Otherwise, it comes in. In this case here, Your Honors, when you compare our case with the other cases of this circuit, Arambula, Castillo, Howell, Martinez, our case is probably more on point than the rest of those. Granted that this evidence may also show the defendant's propensity as well. But the point here, Your Honors, is, is there some other reason for having it? In this case, it was incumbent upon us to show that the person in that room had the experience, the knowledge, the opportunity, and so forth, to conduct this transaction. As Arambula aptly notes, it's not every person in the world that has this kind of specialized knowledge. Not many people have that. The person whose voice was heard on the tape that Jasmine Turner pointed out as this defendant has all those things. Well, all it showed is that he knew how to possess on that one prior. The possession prior was just all that's always showed. No, Your Honors. You're talking about just the possession. Just the possession. I think more important, in fact, we didn't have the underlying facts of that case come in. It was just the underlying facts of the possession for sale that showed his knowledge of the transactions and so forth. I see that my time is up, unless Your Honor has any further questions. That's all I have. Thank you. Thank you. Interesting. I would like to make three brief points. Could you address specifically the government's argument that the only proffer you made was for purposes of showing it was knowledge and intent? And if he didn't, what was it to show? Bob. As we argued below, Judge, the answers to questions one and three don't, even if he's truthful regarding the answers to one and three, don't preclude a finding of guilt. It may not have been his. It may have been someone else's, but he was doing the transaction for someone else. And the same is true for number three. Let me ask you this. I think the government raises an interesting point that if you looked at the questions in the abstract, you could make that argument. But if you look at them in light of your defense and their evidence, you would come to a different conclusion. So what do you think the benchmark is for gauging whether or not those questions go to intent and knowledge? You know, I guess I don't have a good answer for the court. It's just it's a little too metaphysical for my brain to follow. Well, we're going to have to get metaphysical probably before we're done. So if you have any thoughts on it, now's the time. I really don't. But I would just argue to the court that what the government is really asking for, the effect of what the government's asking for is a reversion back to the per se rule that they're just not admissible. Well, he's overt about that. I'm sorry. He's overt about that. And that's not they think that's where we're going. And that's where they like us to be. But that isn't the state of law. And even Campos, for example, says polygraph evidence relating to collateral issues will continue to be potentially. Now, that's what I was asking my question for, because it still has to be relevant. I mean, Doebert and all of that. It still ultimately has to be relevant evidence. So what is the collateral issue here that's relevant? The collateral issues. Was it yours? Yes. No. For what purpose? Why is that relevant? Because it's it has probative as it has probative value about whether or not he was involved in the transaction. OK. Why isn't it implicit with that? A four or three ruling was made when all of that was presented to the judge. And he ultimately did not allow it. Well, it's an interesting point, Judge. It was presented. It was it was mentioned in a written brief. The government writes four or three in their brief. But in the oral argument, it was never discussed in the three pages of the transcript that cover the oral argument. Four or three never mentioned. And then you get the summary refusal by the judge to allow it. So while four or three is mentioned in a brief somewhere, it was never argued. And I think your honor had a good point that if seemingly the trial judge did not exercise discretion on that point at the trial level, can you supplant your discretion for his? I think the answer is no. I didn't do a very good job, your honor, addressing your question about the sufficiency of the evidence. And I don't know if you want me to replow that. You know, I think that we've got the transcripts in the brief. So unless you have an overwhelming urge, I don't. Thank you very much. Thank you. It's a very interesting case. We thank counsel for arguments. The case of the United States versus Ramirez Robles is submitted. I also note the collegiality amongst counsel and the district court. First time I've seen a record where the district court called you both by names. That's a good tribute to practicing law. Yeah. Yeah. Good. The next case for argument this morning, United States versus Anderson. I left my glasses. Thank you.
judges: Hug, McKeown, Fisher